**STATE PROPERTY AND BUILDINGS COMMISSION of the Commonwealth of Kentucky et al., Appellant,**

v.

**J. H. TURPIN, d/b/a Turpin Coal Company et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 20, 1959.

Rehearing Denied Jan. 29, 1960.

Jo M. Ferguson, Atty. Gen., Earle V. Powell, Asst. Atty. Gen., for appellant.

Logan E. Patterson, Pineville, for appellee.

MOREMEN, Judge.

The United States of America leased to this Commonwealth, in connection with a Kentucky Forest Project, certain land which it had acquired. A part of this tract of land had been acquired from H. C. Williams who had reserved coal and mineral rights for a period of 50 years from November 12, 1935. Subsequently, Williams deeded to appellees, J. H. Turpin and his brother, these mineral rights. Turpin also acquired from J. I. West similar mineral rights under adjacent property. The surface of these lands is divided by U. S. Highway 25–E between Pineville and Middlesboro.

The parties have agreed that the right of the mineral owners to exploit the minerals is governed by certain rules and regulations, two of which read as follows:

"VIII. Buildings, camps, roads, bridges, and other structures or improvements necessary in carrying on mining, oil or gas operations, shall be located as approved by the Federal State officer in charge, except as to the location of oil or gas derricks, rigs, boilers and tanks, which are to be located, however, according to recognized good practice. When a building, camp or other structure is removed from one location to another, all debris resulting from such removal shall be burned or otherwise disposed of as directed by the officer in charge."

"IX. All buildings, camps, and other structures shall be removed within six months after the completion of mining, oil or gas operations, or the commercial exhaustion of the aforesaid minerals, oil or gas; and all buildings, other structures, materials, tools, and equipment not removed from the land of the United States or its lessee within six months after the aforesaid completion of mining or gas operations, or the commercial exhaustion of the aforesaid minerals, oil, or gas, shall become the property of the United States."

In 1946, or near that time, J. H. Turpin constructed on the surface a concrete block building which he intended to use as an office building for the mine, as a scale house, and as a place for the storage of mining tools and similar items. The building was never entirely completed. Thereafter he constructed a residence for his mine superintendent, and two other similar dwelling houses.

The Commonwealth filed a complaint in the Bell Circuit Court by which it sought a decree directing appellees to vacate the buildings and expressly declaring that appellees had forfeited all right and title to said buildings unto the Commonwealth. It based its claim of forfeiture upon the express terms of the rules above quoted, and insisted (1) that no permission was ever given to construct the buildings, (2) the buildings were not necessary in the mining operation, and (3) the mining operations had been completed for more than six months and, therefore, the buildings were forfeited. Proof was taken upon depositions and, upon submission, the court found for the appellees.

It will be noted that Rule VIII does not require that permission be obtained when necessary buildings, camps, bridges, et cetera are constructed. It is only their location that requires approval.

■ Appellee, J. H. Turpin, testified that he discussed the matter with a group from the Kentucky Division of Forestry and that although Mr. Knadler, who was associate director, had stated he would rather not have had the building constructed at all, he later joined in agreement with the others and the location was approved. Turpin also testified that at various times the location of the other buildings was approved by officials of the Department of Forestry. Mr. Knadler, when testifying, recalled that there had been some conversation about the contemplated building, but the import of his testimony was that such permission had not come through "channels" and there had been no approval in writing. We find nothing in the regulations that requires written permission.

■ There is ample evidence to support the court's finding that such buildings and structures are customarily erected in mining operations. The rule above quoted anticipates that such buildings might be erected when necessary. In Bolen v. Standard-Elkhorn Coal Co., 210 Ky. 43, 275 S.W. 372, the court, in construing a provision in a deed which gave the right to the grantee to erect, maintain and remove structures that might be deemed necessary or convenient, specifically held that the owner of the minerals was entitled to construct miners' houses on such part of the surface as was not being used for agricultural purposes.

■ Finally appellant contends that the mining operations had been completed for more than six months and the buildings were therefore forfeited. Evidence shows that the seam of coal under this land is known as the Mason Seam or Red Ash and it is of very high grade quality. On the east side of the highway there remains between one hundred to one hundred and fifty thousand tons of mineable coal. The west side contains even more. The east side has not been mined for almost ten years because a forest fire had destroyed the tipple and other mining instruments, and market conditions had been such that it was not deemed advisable to begin new operations. However, appellees have spent considerable sums in keeping the mines in operating condition and had expressed a firm intention to resume operations when market conditions warranted it. Under the evidence, the court was correct in finding that there had been no abandonment or completion of mining.

We do not believe the findings of the chancellor were clearly erroneous or erroneous at all. The judgment is therefore affirmed.